**CHIKAR, Appellee,**

v.

**CHIKAR, Appellant.**

[Cite as *Chikar v. Chikar* (1989), 61 Ohio App.3d 772.]

Court of Appeals of Ohio,
Clermont County.

No. CA88–10–071.

Decided April 17, 1989.

*Judith Rauchman,* for appellee.

*Steer, Strauss, White & Tobias* and *C. Thomas Dupuis; Nichols, Spidel & Nichols* and *James G. Nichols,* for appellant.

*Per Curiam.*

This cause came on to be heard upon an appeal from the Clermont County Court of Common Pleas, Domestic Relations Division.

This is an appeal by defendant-appellant, James S. Chikar, from the judgment of the Clermont County Court of Common Pleas, Domestic Relations Division, which awarded his wife, plaintiff-appellee Kay Chikar, a divorce.

On November 6, 1987, appellee filed a complaint for divorce seeking to end her eighteen-year marriage to appellant. On February 19, 1988, that complaint came on for hearing before a referee, who was asked to make a report both on the merits and regarding a division of property. Following that hearing, the referee filed a written report in which he recommended, *inter alia*, that appellee be paid $500 per month in sustenance alimony for ten years. Over appellant's objection to the referee's sustenance alimony recommendation, the court approved and adopted the referee's report and entered judgment granting appellee a divorce in conformity therewith. This appeal followed.

In his brief before this court, appellant presents a single assignment of error which states:

"The trial court erred and/or abused its discretion to the prejudice of the defendant-appellant in failing to overrule the referee's recommendations as to sustenance alimony."

In support of his assignment of error, appellant argues the court below abused its discretion in awarding appellee $500 per month in sustenance alimony for ten years. We agree.

In *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, the Ohio Supreme Court summarized Ohio law on the subject of alimony. It stated in part at 95, 518 N.E.2d at 1200:

"In Ohio, alimony is comprised of two components: a division of marital assets and liabilities, and periodic payments for sustenance and support. *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 352 [20 O.O.3d 318, 321, 421 N.E.2d 1293, 1297]. After the division of property is made, the trial court may consider (1) whether an additional amount is needed for sustenance and (2) the duration of such necessity. *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399 [75 O.O.2d 474, 350 N.E.2d 413]."

Although dissatisfied with the interest rate his share of the equity in the marital residence will earn, appellant has raised no assignment of error respecting the trial court's division of assets and liabilities. Consequently, we can turn immediately to the lower court's sustenance alimony award.

In support of his recommendation that appellant be ordered to pay appellee $500 per month in alimony for ten years (which was only terminable upon appellee's death or remarriage and not subject to continuing jurisdiction for modification), the referee made the following findings:

" * * * I note this is an eighteen (18) year marriage; that as a result of the breakup of this marriage due to Defendant's conduct, the Plaintiff has been receiving and will continue to receive psychological or psychiatric care and treatment; that the Defendant has a job which pays him a much higher salary

and for which retirement benefits are continuing to be accumulated; that the plaintiff is forty (40) years of age with little, if any, training or education beyond high school; and that the Plaintiff was forced, as a result of her marriage, to move on three (3) occasions and has made valuable contributions to the marriage as a homemaker. The remaining factors set forth in R.C. 3105.18 balance equally between the parties.

"Currently, as demonstrated by Plaintiff's exhibit # 1, to maintain her current standard of living, Plaintiff has a need for income of $2,087.90 per month. Her net take home pay is $1,507.29 per month. Thus to maintain her current standard of living, Plaintiff has a need for $580 per month in additional net income."

In addressing sustenance alimony *Kaechele, supra,* 35 Ohio St.3d at 95, 518 N.E.2d at 1200, made the following important observation:

" * * * The standard of living achieved by the parties during their marriage is often altered upon termination. While we recognize that ' * * * neither party should make a profit at the expense of the other * * *,' *Cherry, supra,* [66 Ohio St.3d] at 355 [20 O.O.3d at 322, 421 N.E.2d at 1299], we do not interpret R.C. 3105.18 to require an alimony award that provides the parties with an equal standard of living or a standard of living equivalent to that established during the marriage. Sustenance alimony is based on need, and the trial court must have latitude to examine all the evidence before it awards an amount that is reasonable and equitable to both parties."

In order to establish appellant's sustenance alimony obligation to appellee, the referee first determined appellee's "current standard of living" by adding together the living expense figures she provided in certain exhibits and then computed her "need" for sustenance alimony by subtracting her net take home pay from that standard of living figure. This computation produced a $580 per month shortage.

The referee then ascertained appellant's ability to pay by critically scrutinizing his income and expense exhibits. This scrutiny convinced the referee that appellant's expense claims were excessive due, at least in part, to the fact that he was sharing expenses with a female companion and, consequently, was actually better able to pay than he claimed. These observations notwithstanding, we conclude the trial court's adoption of the referee's findings regarding appellee's need and appellant's ability to pay constituted an abuse of discretion because they were based upon a double standard (the "need" expenses the referee found to be legitimate in appellee's case were deemed excessive for appellant and thus increased his ability to pay, even though they were relatively similar in amount).

While the referee below found appellant's $200 per month grocery expense and a $300 per month entertainment expense were effectively double what

they legitimately should be, he unquestioningly accepted appellee's $175 per month grocery figure (which was only $25 less than appellant's), her $200 per month entertainment figure (which was two-thirds as much as appellant's entertainment claim), and he undertook no scrutiny whatsoever of appellee's $130 per month claim for "housecleaning and gifts" despite the fact that he found appellee had made a valuable contribution to the marriage as a homemaker and despite the fact that she also claimed a $25 per month expense for "contributions."

Assuming both appellant and appellee were entitled to a reasonably equal standard of living, we cannot approve of the adoption of a referee's report which holds one spouse's "need" figure is legitimate, but the other spouse's equal claim for the same "need" is not. In fact, in the final analysis, as *Kaechele, supra,* recognizes, it is simply unrealistic for the court to expect that the income which formerly supported a single household at a certain level will be able to do the same for two. For better or worse, some lessening of the parties' former standard of living is unavoidable.

In addition to these observations, we also find that the trial court failed to consider, or account for, the fact that some of appellee's "need" expenses were not necessarily long term. For example, while expressly recognizing that appellee was spending $140 per month on psychological care due to the breakup of her marriage, the decree contains no provision for continuing jurisdiction to modify appellant's sustenance alimony obligation once she stopped seeing a psychologist. See *Colwell v. Colwell* (Oct. 11, 1988), Butler App. No. CA88–03–043, unreported, 1988 WL 105548. Thus, the trial court abused his discretion to some extent in the duration of the $500 per month award.

Taken together, we conclude that the court's adoption of the referee's sustenance alimony need and ability to pay computations constituted an abuse of discretion, *Kaechele, supra,* because they were based on inequitable treatment of the parties' monthly expenses. The court further abused its discretion by failing to consider that some of appellee's needs were temporary in duration, and, therefore, did not support a non-modifiable ten-year sustenance alimony award of $500 per month.

Based on these observations, we sustain appellant's assignment of error, reverse the judgment of the court below insofar as it adopted the referee's recommendation and awarded appellee $500 per month in sustenance alimony, and remand this case to the court for further proceedings.

*Judgment reversed*
*and cause remanded.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.